FILED

2016 Oct-20  PM 12:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| REGINALD BURRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-00977-AKK-TMP |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff, Reginald Burrell, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at Donaldson Correctional Facility, in Bessemer, Alabama.[1]  The sole remaining defendant in this action is Mohammad Jenkins, against whom the plaintiff brings a claim for retaliation, in violation of his First Amendment Rights.[2] In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

---

[1] The plaintiff has since been released from prison.  (Doc. 20).

[2] All other defendants and claims were dismissed by court order on February 19, 2016. (Doc. 25).

# I. Procedural History

On February 19, 2016, the court entered an Order for Special Report directing that copies of the complaint be forwarded to the named defendant and that the defendant file a special report addressing the factual allegations contained therein.  (Doc. 26).  The court advised the defendant that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would considered it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (*Id.*).  The order advised the plaintiff that, after he received a copy of the special report, he would have twenty-one days to file his initial disclosures pursuant to Rule 26(a)(1), Federal Rules of Civil Procedure.  (*Id.*).

On May 19, 2016, defendant Jenkins filed a Special Report, supplemented by an affidavit and other evidence.  (Doc. 35).  On May 20, 2016, the parties were notified that the court would construe the special report as a motion for summary judgment and the plaintiff was notified that he had twenty-one (21) days to respond to the motion for summary judgment, by filing affidavits or other material.  (Doc. 36).  The court also advised him of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  (*Id.*).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  The plaintiff then filed requests for documents (docs. 37, 38, 44, 45, 46), which ultimately were granted in part and denied in part (docs. 40, 43,

2

51).  On August 1, 2016, the plaintiff filed a response to the defendant's motion for summary judgment.  (Doc. 47).   The court ordered that certain documents be produced and the plaintiff was allowed additional time to file any further response to the motion for summary judgment.  (Docs. 48, 51).  The plaintiff then filed an additional response to the motion.  (Doc. 52).

## II. Standard of Review

Because the court has construed the defendant's special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a

matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is pro se, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts[3]

Based on a November 2012 disciplinary report by the defendant, asserting that the plaintiff caused other inmates to become disorderly, the plaintiff spent seven months and nine days in disciplinary segregation.  (Doc. 1 at 38-39).  The plaintiff was released from segregation on June 24, 2013, and placed in the Crime Bill program.  (*Id*., at 43).  For reasons unknown to him, he was reassigned to the C-D Block on July 26, 2013.  (*Id*.).

On August 9, 2013, the plaintiff was stabbed six times.  (Doc. 1 at 10).  The plaintiff went to fellow inmate Terence Jackson's cell because the plaintiff had possession of Jackson's cell phone,[4] awaiting Jackson's repayment of the plaintiff's "green dot."[5]   (*Id*.).   Once in Jackson's doorway, the plaintiff was pushed into the cell by inmates Johny Jones, Douglas McMean and "Moore." (*Id*.).  Jackson demanded his phone be returned, to which the plaintiff replied that they had an agreement.  (*Id*.).  At that point, Moore told Jackson just to stab the plaintiff, and Jackson complied, pulling out a prison knife.  (*Id*.).  In the ensuing

---

[3]The court considers only the facts relevant to the plaintiff's First Amendment retaliation claim against defendant Jenkins.

[4]  The court judicially knows that possession of cell phones by prisoners is a disciplinary infraction as cell phones are considered contraband.

[5]  "Green Dot" is a prepaid, reloadable credit card provided by Green Dot Bank.  *See e.g.,* www.greendot.com.  The plaintiff explains in one of his responses to the motion for summary judgment that he sold various canteen items to other inmates in exchange for Green Dot money packs.  (Doc. 52 at 8).  Because inmate Jackson owed the plaintiff money for his purchases, the plaintiff had possession of Jackson's phone until Jackson made some payments.  (*Id*.).

scuffle, McMean grabbed the plaintiff from behind in a choke hold, and Jones grabbed the plaintiff's arms. (*Id*.). Due to the choke hold, the plaintiff collapsed. (*Id*.). He awoke on the floor, bleeding. (*Id.*). All four of the other inmates had knives. (*Id*., at 11). Jones told the plaintiff he had to tell them where to find Jackson's cell phone, and that if he lied, he would "get the same thing all over again." (*Id.*). The phone was retrieved and the plaintiff was released. (*Id.*).

The plaintiff was taken to the health care unit with two "puncture wounds," two scrapes, and a laceration. (Doc. 35-4). In contrast, inmate Jackson's body chart showed only a small scratch to his right elbow and noted no complaints of pain or discomfort. (Doc. 35-5).

After the plaintiff's wounds were treated, the plaintiff was questioned by Captain Tew, Captain Baldwin, Officer Felton, Sergeant Taylor, and Sergeant Davis. (Doc. 1 at 11-12). While in Captain Baldwin's office, defendant Sergeant Mohammad Jenkins started screaming that nobody actually injured the plaintiff, that the plaintiff was lying, and that the altercation between the plaintiff and Jackson was because the plaintiff had used Jackson's mother's address to file a fraudulent IRS claim. (Doc. 1 at 12, 14). The plaintiff told Baldwin that he and Jenkins had a history involving sexual complaints and investigations, and therefore Jenkins wanted retaliation. (*Id*., at 12-13). Jenkins "took the investigation away from Sergeant Davis, omitted the stabbing from the incident report, and replaced it

6

with what Jackson, Jones, McMean, and Moore claimed, namely that it was "a fight without a weapon because I [was] suppose[d] to have used Jackson['s] mother['s] address and got her in [a] $14,000 debt with the IRS." (*Id.*, at 14). Jenkins told the plaintiff, "we about to run a train on your ass." (*Id.*). Jenkins then announced he was taking the plaintiff to segregation, and no other inmates would be locked up. (Doc. 1 at 14; *see also* doc. 35-3 at 2). All of the inmates who attacked the plaintiff were released back into general population. (Doc. 35-3).

Jenkins brought two disciplinary charges against the plaintiff. (Doc. 1 at 20, 24). The first charge was "fighting without a weapon." (*Id.*, at 16, 20-22). The hearing officer, Lester Murray, noticed that although the body chart showed stab wounds, the incident report omitted any such injury. (*Id.*, at 16). Murray further noted that the plaintiff was the only one in the incident charged and placed in segregation.[6] (*Id.*, at 16). However, after hearing testimony from Jenkins and other officers, the hearing officer found the plaintiff guilty. (*Id.*, at 16-17). Warden Cedric Specks disapproved that finding because he believed the plaintiff's wounds to be consistent with the plaintiff's version of events. (*Id.* at 21, doc. 35-6 at 3). The plaintiff was also charged with and found guilty of "intentionally creating a security, safety or health hazard" in a separate disciplinary hearing

---

[6] According to Jenkins, "Burrell had just come out of detentions (seg.) which indicates he was more of a constant or regular threat to security (more so than Jackson). Burrell was an inmate who stayed in trouble, the same was not as much the case with inmate Jackson." (Doc. 35-9 at 3). The plaintiff disputes this. (Doc. 47 at 1-4).

conducted by Sgt. Davis, based on Jenkins' testimony that inmate Jackson's mother told him that the plaintiff was involved in a tax scam which left her $14,000 in debt with the IRS. (*Id.*, at 17, 24; doc. 35-7). Jenkins testified at the hearing that Jackson's mother had sent him sworn statement concerning the plaintiff's involvement in that tax scam.[7] (*Id.*, at 24).

The plaintiff responds that he knew nothing about a tax scheme. (Doc. 52 at 8). Rather, the plaintiff asserts he had inmate Jackson's cell phone as collateral for payments Jackson owed the plaintiff for purchases Jackson made from the plaintiff for commissary type items. (*Id.*).

## IV. Analysis

### A. First Amendment Claim

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). An inmate raises a First Amendment claim of retaliation by showing that a prison official disciplined him for filing a grievance or lawsuit concerning the conditions of his imprisonment. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). To prevail on a claim for retaliation under the First Amendment, a prisoner must establish that "(1) he engaged in constitutionally

---

[7]Although Jenkins was ordered to produce inmate Jackson's mother's statement, Jenkins has informed the court "[t]he documents supporting the charge that Plaintiff had been involved in a tax scheme related to Inmate Jackson's mother (including any affidavit or statement from her) have not been located at this time, despite their reference in the disciplinary report." (Doc. 41).

protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013). Such a causal connection may be shown by a chronology of events that create a plausible inference of retaliation. *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988). Should the plaintiff satisfy this burden, demonstrating that his protected conduct was a motivating factor behind the harm, the burden shifts to the defendant to demonstrate that he would have taken the same action in absence of the protected activity. *Smith*, 713 F.3d at 1063.

Thus, to prevail on a claim for retaliation, the plaintiff must show that defendant Jenkins retaliated against him for his prior protected activity, specifically his grievances and other complaints about Jenkins to Jenkins' supervisors. *See Woodyard v. Alabama Dep't of Corr.*, 606 Fed.App'x 572, 574 (11th Cir. 2015) (citing *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)) (retaliating against a prisoner by punishing him for filing a grievance concerning the conditions of his confinement violates the First Amendment)). The plaintiff asserts incidents dating back to 2010, when another officer had to intervene and order defendant Jenkins to stop harassing the plaintiff.[8] (Doc. 1 at 30). Jenkins then labeled the plaintiff as a "rat" and a "snitch." (*Id.*). In 2011 someone filed a

---

[8]This harassment included stalking the plaintiff and targeting him for personal searches. (Doc. 1 at 30).

9

sexual misconduct and harassment report, bearing the plaintiff's name, against defendant Jenkins. (*Id*.). Defendant Jenkins asserts he knew the plaintiff had not actually made this report. (Doc. 35-9 at 1-2). However, the plaintiff claims that defendant Jenkins "was mad and called me out my cell block threatening to destroy me . . ." the day this report was investigated. (Doc. 1 at 30).

In November 2012 the plaintiff again complained of defendant Jenkins' misconduct, after which Jenkins "cursed me out and tried to assault me and resulted into writing a false report against me adding and taking away from my words causing me to be put in lock up and closed custody for 7 months and 9 days." (*Id*.). The plaintiff wrote to the Classification Director and Commissioner of the Alabama Department of Corrections in January 2013 concerning defendant Jenkins' treatment of him. (Doc. 1 at 35). The plaintiff also complained to Grant Culliver, Institutional Coordinator, about defendant Jenkins in November 2013, to which Culliver responded "I recall addressing a similar issue with you in a previous letter about Officer Jenkins. I would suggest if you find yourself in some type of disagreement with Officer Jenkins . . . you notify the shift commander on duty." (Doc. 1 at 32).

By affidavit, defendant Jenkins first asserts that the plaintiff, prior to August 9, 2013, had not filed complaints against him, and therefore Jenkins had no reason to retaliate. (Doc. 35-9 at 1). He then agrees that someone wrote a 2011 grievance

against him, addressed to the Warden and accusing him of sexual harassment. (Doc. 35-9 at 1-2). While this grievance bore the plaintiff's name, he states that the plaintiff denied writing it, and Jenkins did not think he wrote it. (Doc. 35-9 at 2). Therefore, Jenkins asserts he had no reason to retaliate against the plaintiff based on the 2011 grievance. (*Id.*).

Viewing the evidence in the light most favorable to the plaintiff, and drawing all reasonable inferences therefrom, the 2012 and 2013 complaints by the plaintiff, specifically about Jenkins to his superiors, were protected activity. There is no evidence that the 2011 grievance against Jenkins was protected activity *by the plaintiff*, as it seems to be undisputed that the plaintiff did not file that grievance.

As to the second element, the standard the court must apply is whether the discipline the prisoner received "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). *See also Pittman v. Tucker*, 213 Fed.App'x 867, 870 (11th Cir. 2007) (holding that "a plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights."). As the court ruled in *Pittman,* a jury could find that "the

prolonged campaign of harassment . . . could have such a chilling effect." *Id.*, 213 Fed.App'x at 870.

Defendant Jenkins asserts that being placed in segregation for "a few days" does not meet this standard. He further disputes that being charged with two disciplinaries would deter a person of ordinary firmness from engaging in protected speech. Defendant Jenkins relies on speculative, inappropriate commentary, misapplication of Eleventh Circuit standards, and misrepresentation of the punishment the plaintiff received to support his arguments. The defendant states

> Jenkins disputes that being charged with two disciplinaries (one of which was nullified) and being temporary placed in segregation might deter a person of ordinary firmness (especially if this person is an inmate like Burrell who spends a lot of time in segregation anyway) from engaging in protected speech. *See Szemple v. Talbot,* 141 F. App'x 52, 54 (3d Cir. 2005) (reasoning that "confinement [to segregation] limited to a few days … would [not] deter a person of ordinary firmness from exercising his constitutional rights."); *Bright v. Thompson*, No. 4:10CV-P145-M, 2011 WL 2215011, at *5 (W.D. Ky. June 6, 2011), aff'd, 467 F. App'x 462 (6th Cir. 2012) (holding, inter alia, that where "Plaintiff was only in segregation for nine days" there was insufficient adverse action for a retaliation claim). In the instant case, it appears that Burrell was held in administrative hearing (sic) for only 15 days between the time of the August 9, 2013 incident and his August 24, 2013 disciplinary hearing where Burrell was sentenced to 30 days in disciplinary segregation. (See Exhibits 3 and 7). Of course, Jenkins was not the hearing officer so there is no causal link between him and the latter segregation. Obviously, none of these events deterred Burrell from filing this action.

(Doc. 35 at 6-7).

However, the proper inquiry is not whether the plaintiff was deterred, but rather whether an ordinary prisoner would be deterred. *Bennett*, 423 F.3d at 1254. Based on the August 9, 2013, incident, the plaintiff received 30 days segregation, on top of defendant Jenkins' decision to place the plaintiff in administrative segregation for fifteen days prior to the disciplinary hearing. This is not a situation where the plaintiff received "a few days" or "nine days," like the cases the defendant cites, or even 15 days, as the defendant represents, but rather a total of 45 days in segregation.[9] Thus, in contrast to the "few days" as suggested by Jenkins, forty-five days in segregation is certainly within the realm of deterring ordinary prisoners from filing grievances, regardless of whether it had that effect on the plaintiff. The defendant's arguments otherwise are contradicted by the law of this circuit.[10] *See e.g., Pittman*, 213 Fed.App'x at 870; *Bennett*, 423 F.3d at 1254 (noting that this Circuit adopts an objective test to prove retaliation and stating "there is no reason to 'reward' government officials for picking on unusually hardy speakers.")).

---

[9] Defendant Jenkins argues that, because he was not the hearing officer, no causal link exists between him and the 30 days segregation the plaintiff received. (Doc. 35 at 7). This argument defies logic. Defendant Jenkins brought both of the disciplinary actions against the plaintiff and then testified against the plaintiff at both hearings. But for Jenkins' decision to charge the plaintiff with the infractions, the plaintiff would not have been in segregation at all.

[10] The court may not consider the effects of the defendant's actions on the plaintiff in particular when considering whether the actions had a chilling effect, but rather must consider the likely effect on a prisoner of ordinary firmness, "as it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. . . ." *Bennett*, 423 F.3d at 1252 (citation omitted).

The third prong of the inquiry considers whether Jenkins was subjectively motivated to charge the plaintiff, but not the other prisoners involved, with fighting without a weapon, because of the plaintiff's prior complaints against Jenkins.  To establish this causation, the plaintiff must demonstrate evidence which supports a finding that Jenkins was actually motivated to discipline him because of his prior complaints about Jenkins' treatment of him.  *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." *Jemison v. Wise*, 386 Fed.App'x 961, 965 (11th Cir. 2010) (citing *Mosley*, 532 F.3d at 1278).

Drawing all reasonable inferences in the plaintiff's favor, evidence of Jenkins' motivation includes the plaintiff's testimony that Jenkins "took the investigation away from Sergeant Davis, omitted the stabbing from the incident report, and replaced it with what Jackson, Jones, McMean, and Moore claimed, namely that it was "a fight without a weapon because I [was] supposed to have used Jackson['s] mother['s] address and got her in [a] $14,000 debt with the IRS," and Jenkins statement to the plaintiff that "we about to run a train on your ass." (Doc. 1 at 14).   *See e.g., Pittman*, 213 Fed.App'x at 870 ("It is reasonable to discern that the threat was intended to deter [the plaintiff's] filing of a grievance.").

14

Thus, the question of discriminatory intent by Jenkins in completing an allegedly false disciplinary report is a question for the trier of fact.  *See Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995).

Under the burden-shifting formula from *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm [i.e., disciplinary action], the burden of production shifts to the defendant." *O'Bryant v. Finch*, 637 F.3d 1207, 1217 (11th Cir. 2011) (citing *Mosley,* 532 F.3d at 1278).  "Then, if the defendant can show that he would have taken the same action in the absence of protected activity, he is entitled to prevail on his motion for summary judgment as a matter of law...."  *Id*. (alternations omitted).  "In other words, if the official can show that he would have taken the disciplinary action in the absence of the prisoner's protected conduct, he cannot be held liable."  *Id.* (citing *Mosley,* 532 F.3d at 1278 n.22).

By sworn complaint, the plaintiff has averred that defendant Jenkins omitted facts from the disciplinary report, such as that he was stabbed multiple times, made up a tax fraud allegation against the plaintiff, and made comments to the plaintiff such as "we about to run a train on your ass."  In contrast, defendant Jenkins has not provided sufficient evidence to demonstrate he would have taken the same

actions in the absence of the plaintiff's prior protected conduct.[11]  This conclusion is supported by defendant Jenkins' failure to address the plaintiff's grievances against him, his own sworn statement that evidence in support of Jenkins' testimony at the disciplinary hearing is now "missing,"[12] his hearsay affidavit statements, and his further statements that the basis for the disciplinary report against the plaintiff, the tax fraud, was not the real reason for that report.  He now asserts that

> [T]here was a legitimate basis for the allegation about Burrell and the tax fraud involving [] inmate Jackson's mother.  First, this accusation was made by inmate Jackson as one cause of the fight.  Additionally, I investigated the allegation about the tax fraud by calling Jackson's mother who verified the claim by Jackson.  The main reason for the fight, however, was the cell phone that belonged to Jackson.  Jackson had loaned the phone to Burrell . . . and Burrell had refused to return it to Jackson.  Jackson thought Burrell had either loaned the phone to another inmate or sold the phone to another inmate. . .

---

[11] Defendant Jenkins argues that the plaintiff does not deny that he was involved in an altercation, a dispute over a cell phone, or a tax fraud scheme.  (Doc. 35 at 7).  He continues that "[h]e only wants to add to that mix use of a knife as if that fact made a huge difference in this context."  (*Id.*).  The plaintiff denies any knowledge of a tax fraud scheme.  (Doc. 52).  He denies participation in an altercation, rather he asserts he was attacked and stabbed.  (Doc. 1 at 10-11).  And given the facts before the court, the use of a knife by defendant Jackson, while the plaintiff was held in Jackson's cell by inmates Moore, McMean, and Jones, certainly does "ma[ke] a huge difference in this context."

[12] As explained in Report and Recommendation dated November 23, 2105 (doc. 19), and adopted by the District Judge on February 19, 2016 (doc. 26), the plaintiff may not base his First Amendment claim on the disciplinary hearing for creating a security, safety, or health hazard because he was found guilty of the charge.  *See e.g., O'Bryant*, 637 F.3d at 1216.  However, the court does consider defendant Jenkins' stated reasons for bringing that disciplinary action against the plaintiff as evidence of defendant Jenkins' subjective motivation in bringing the "fighting without a weapon" charge against the plaintiff.

(Doc. 35-9 at 3).[13]

Although Jenkins charged the plaintiff with fighting without a weapon, and the plaintiff was found guilty of this charge by the hearing officer, Warden Specks overturned this ruling, finding that the plaintiff's injuries were consistent with the facts as alleged by the plaintiff. (Doc. 1 at 21). Jenkins asserts that just because Warden Specks found the fighting without a weapon charge against the plaintiff to lack merit, "does not mean I did not have a factual basis for the charge." (Doc. 35-9 at 4). Defendant Jenkins then states that the plaintiff's allegations, namely that Jenkins made up the reason for the fight, are untrue. (Doc. 35-9 at 2). He claims that the plaintiff's injuries, described in the body chart as "puncture wounds,"[14] could have resulted from the inmates fighting and bumping into sharp objects, because this "happens all the time." (*Id.*; doc. 35-4). Therefore, Jenkins states he was justified is charging the plaintiff with fighting without a weapon. (Doc. 35-9

---

[13] Both the defendant's special report and defendant Jenkins' affidavit contains several statements that are wholly speculative, inappropriate, and rank hearsay. (Docs. 35 at 4, 35-9 at 3). These comments, which appear in both documents, include "Jackson had loaned the phone to Burrell (maybe so he could commit the tax fraud)" and "Jackson thought Burrell had either loaned the phone to another inmate or sold the phone to another inmate (maybe because Burrell was mad that he had not made any money off the tax fraud plan)." These comments, which are rank hearsay, are **STRICKEN**. Moreover, cell phones are contraband in prison. Thus, if the plaintiff was placed in segregation for violating prison rules because he had a cell phone, then Jenkins failure to charge Jackson, as the known owner of the phone, with possession of contraband, raises a further inference of retaliation against the plaintiff.

[14] Specifically, the injuries are described as "puncture wound one inch deep L hamstring," "puncture wound ½ inch deep L center quad," scrapes, scratches, and "one inch laceration R upper forearm." (Doc. 35-4). That body chart records the plaintiff as stating "Some guys out there held me hostage in the cell for 30 minutes after I was stabbed by these guys." (*Id.*).

at 2-3).   However, Jenkins also recognizes that Warden Specks "threw out the charge because the facts . . . were inconsistent with the fighting without weapon charge. . . ."  (*Id*., at 4).   Additionally, the defendant asserts that the plaintiff went to administrative segregation while inmate Jackson was released to population because the plaintiff had just come out of segregation "which indicates he was more of a constant or regular threat to security."[15]  (*Id.*, at 3).

The court must consider "all evidence and reasonable factual inferences . . . in the light most favorable to the party opposing [summary judgment]."  *Warren v. Crawford*, 927 F.2d 559, 561-62 (11th Cir. 1991).   Defendant Jenkins has failed to show that the plaintiff would have been charged with the same offense and placed in administrative segregation in absence of the plaintiff's prior complaints against Jenkins.   For the reasons set forth above, and considering all of the evidence of record, a trier of fact could reasonably find that Jenkins retaliated against the plaintiff for the plaintiff's prior complaints.  *See e.g., Smith*, 713 F.3d at 1064 (finding summary judgment improper where the defendant could not provide a non-retaliatory explanation for its actions.).   The motivation under which defendant Jenkins' acted is a genuine issue of material fact, properly left for the trier of fact in this action.

---

[15]  The defendant's explanation that the plaintiff was "more of a constant or regular threat to security (more so than Jackson)" (doc. 35-9 at 3), provides no rational basis for placing plaintiff in administrative segregation prior to his hearing, but returning Jackson --- charged with the identical infraction --- to population.

### B. *Official Capacity Claims*

To the extent the plaintiff brings claims against defendant Jenkins in his official capacity, those claims are due to be dismissed.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59] (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

Because in his official capacity defendant Jenkins is a state actor, and thus entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him, any such claim the plaintiff brings is due to be dismissed.

### C. *42 U.S.C. § 1997e(e)*

The defendant argues that the plaintiff's claims are barred by 42 U.S.C. § 1997e(e).  Under that section of the Prison Litigation Reform Act ("PLRA"), a prisoner must have physical injuries to pursue compensatory or punitive damages. *See e.g., Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003).  Here, the plaintiff

does not assert any physical injury from the alleged violations of his First Amendment rights by defendant Jenkins. Thus, § 1997e(e) presents a bar to the plaintiff's claims for compensatory and punitive damages because his claims were filed during his confinement. *Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011). *See also Harris v. Garner*, 216 F.3d 970, 979 (11th Cir. 2000) (distinguishing between claims filed during confinement, and claims filed after release from prison).

However, the PLRA does not preclude an award of nominal damages if a plaintiff establishes the violation of a constitutional right. *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 537 U.S. 277 (2011); *Hughes*, 350 F.3d at 1162 (citation omitted). In this case, the plaintiff has alleged no physical injury in connection with his retaliation claims. He is therefore barred by the PLRA from seeking compensatory and punitive damages. *See Allen,* 502 F.3d at 1271. Thus, the plaintiff's claims for damages, other than nominal damages, are due to be **DISMISSED**.[16] However, because the PLRA does not bar the plaintiff's claims completely, his claims, as compensable by nominal damages, survive.[17]

---

[16] Because the plaintiff has been released from custody, his claims for injunctive relief are **MOOT**.

[17] The Eleventh Circuit has suggested that the liberal construction due pro se complaints combined with Rule 54, Fed.R.Civ.P., requires that claims for nominal damages be read into pro se complaints. *See e.g., Williams v. Brown*, 347 Fed. App'x 429, 436 (11th Cir. 2009).

D. *Qualified Immunity*

Finally, defendant Jenkins asserts he is protected by qualified immunity. (Doc. 35 at 8).   Qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Once a public official establishes that he was acting within the scope of his discretionary authority, the plaintiff must demonstrate that the defendant violated a constitutional right and that the right was clearly established at the time. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).   Here, defendant Jenkins was clearly acting within his discretionary authority at the time he wrote the disciplinary reports. Additionally, the facts as alleged by the plaintiff describe a violation of the plaintiff's constitutional rights.   Thus, the court must decide whether that right was "clearly established" at the time in question.   Clearly established law is law that is "sufficiently clear that a reasonable official would understand that what he is doing violated that right."   *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).   "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."   *Id*.  Multiple cases in this Circuit

21

have put prison officials on notice that they may not retaliate against inmates for filing lawsuits or administrative grievances. *See e.g., Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *Wildberger*, 869 F.2d at 1468. This body of case law is sufficient to clearly establish this right and to provide fair warning as to the general unlawfulness of defendant Jenkins' actions in this case. His request for qualified immunity is therefore due to be **DENIED**.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** that the motion for summary judgment (doc. 35) be **DENIED,** that the plaintiff's request for injunctive relief be dismissed as **MOOT,** and that the plaintiff's request for compensatory and punitive damages be **DISMISSED** under the PLRA. The undersigned further recommends that this action be referred to the magistrate judge for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.

Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint which the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

The Clerk is DIRECTED to mail a copy of the foregoing to the plaintiff.

DONE this 20th day of October, 2016.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE